IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

DALE ALAN CALDWELL,

      **Plaintiff,**

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      **Defendant.**

No. C13-2050

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   *Caldwell's Education and Employment Background* . . . . . . . . . . 5
     B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
          1.   *Caldwell's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 6
     C.   *Caldwell's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 12
     B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 14
          1.   *Treating Source Opinions* . . . . . . . . . . . . . . . . . . . . . . 14
              a.   *Dr. Baridon's Opinions* . . . . . . . . . . . . . . . . . . . 15
              b.   *Dr. Calderwood's Opinions* . . . . . . . . . . . . . . . . 18
          2.   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 20
          3.   *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . . 22
     C.   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VII. *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Dale Alan Caldwell on June 24, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Caldwell asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Caldwell requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

On November 7, 2011, Caldwell protectively filed an application for SSI benefits.[1] In his application, Caldwell alleged an inability to work since February 6, 2003 due to residuals from a head injury, dizziness, confusion, depression, anxiety, vision problems, and shakiness.[2] Caldwell's application was denied on April 25, 2012. On November 29,

---

[1] Caldwell also filed an application for Title II disability insurance benefits; however, that application is not under review. In his brief, Caldwell explains that he "filed previous applications, which were denied on January 6, 2011. The ALJ declined to reopen these applications, and because their final determination fell after Mr. Caldwell's date last insured, the ALJ dismissed Mr. Caldwell's Title II application." Caldwell's Brief (docket number 10) at 2, n.1. *See also* Commissioner's Brief (docket number 13) at 3, n.1 (providing the same); Administrative Record at 16 (ALJ's decision providing the same). Thus, as the ALJ noted, his decision "considers only [Caldwell's] Title XVI application[.]" Administrative Record at 16.

[2] In his decision, the ALJ noted that the disability onset date for Caldwell's Title XVI claim is November 7, 2011, the date Caldwell protectively filed his application. *See* Administrative Record at 16. Similarly, in her brief, the Commissioner states that "[t]o be eligible for Title XVI benefits, plaintiff must establish that he was disabled while his application was pending. 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.330, 416. 335. Thus, the relevant time period for consideration of his claim under Title XVI is from November 7, 2011, the date his application was protectively filed, through March 4, 2013, the date of the ALJ decision." Commissioner's Brief (docket number 13) at 3, n.1. Caldwell does not challenge the ALJ's determination that his disability onset date for purposes of SSI benefits is November 7, 2011.

2012, his application was denied on reconsideration. On December 28, 2012, Caldwell requested an administrative hearing before an Administrative Law Judge ("ALJ"). On February 22, 2013, Caldwell appeared via video conference with his attorney before ALJ Eric S. Basse for an administrative hearing. Caldwell and vocational expert Carma Mitchell testified at the hearing. In a decision dated March 4, 2013, the ALJ denied Caldwell's claim. The ALJ determined that Caldwell was not disabled and not entitled to SSI benefits because he was capable of performing his past relevant work as a box maker. Caldwell appealed the ALJ's decision. On May 14, 2013, the Appeals Council denied Caldwell's request for review. Consequently, the ALJ's March 4, 2013 decision was adopted as the Commissioner's final decision.

On June 24, 2013, Caldwell filed this action for judicial review. The Commissioner filed an Answer on August 27, 2013. On September 26, 2013, Caldwell filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a box maker. On December 16, 2013, the Commissioner filed a brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 16, 2013, Caldwell filed a reply brief. On July 8, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

3

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even

4

if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Caldwell's Education and Employment Background

Caldwell was born in 1957. Apparently, Caldwell did not graduate from high school but stated at the hearing he earned a GED. Caldwell also testified that at some point, he had six months of vocational auto body training.

The record contains a detailed earnings report for Caldwell. The report covers the time period of 1973 to 2013. Prior to 1975, Caldwell earned less than $700. From 1975 to 1984, Caldwell earned between $1,481.84 (1980) and $8,769.57 (1981). He had no earnings in 1985. From 1986 to 2003, Caldwell earned between $1,106.28 (2003) and $39,249.74 (1998). He has no earnings since 2004.

### B. Administrative Hearing Testimony

#### 1. Caldwell's Testimony

At the administrative hearing, the ALJ inquired of Caldwell why he believed he was unable to work. Caldwell responded he is unable to work because he suffers from dizzy spells and does not know when they will occur. Specifically, Caldwell stated that "in my past, I earned my bread on ladders, climbing walls, driving equipment, construction-type

things, and I don't, I just never know when this is going to happen. The dizzy spells, they come in waves."[3]

Caldwell's attorney also questioned Caldwell at the hearing. Caldwell's attorney inquired about Caldwell's functional abilities:

> Q:   . . . How long do you think you can stand, and what happens after you've stood that long?
> A:   Well, I can just about get through dishes, so maybe 15 minutes or so.
> Q:   And then what happens?
> A:   Then I got to sit down, and the longer I stand up, the longer it takes to recover.
> Q:   And what about with sitting? Do you have any problems sitting down?
> A:   I have to change positions often.
> Q:   And what about walking? How far can you walk?
> A:   I can go three blocks comfortably, but then I have to rest.

(Administrative Record at 56.) Caldwell also testified he doesn't like to socialize with people. He stated he goes to "my daughter's house and my parents' house and the grocery store. That's it."[4] He further stated he has lived at his apartment for 11 years and doesn't know anybody in the apartment complex.

### 2.  *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who:

> has no exertion limitations; can frequently climb[,] balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to noise and pulmonary irritants; can perform simple routine tasks in environments that have occasional interactions with the public, co-workers, and supervisors.

---

[3] Administrative Record at 52.

[4] Administrative Record at 60.

(Administrative Record at 65-66.) The vocational expert testified that under such limitations, Caldwell could perform his past work as a box maker. The ALJ asked a second hypothetical that was identical to the initial hypothetical except that the individual would also be absent from work four days per month. The vocational expert testified that under such limitations, Caldwell would be precluded from competitive employment.

Caldwell's attorney also questioned the vocational expert:

Q:   . . . If the person were to have to take . . . unscheduled work breaks every 30 minutes to an hour lasting 30-45 minutes, would that preclude competitive employment?

A:   Yes, it would.

Q:   And if the person were off task more than 25 percent of the work day or work week, I assume that would preclude competitive employment.

A:   Yes, it would.

Q:   I assume also that if the person were to have each time they were doing light work and each time they rose they would be dizzy and have spells that would last from chest pain and confusion as [Caldwell] described. Would that preclude being able to do light work?

A:   Yes, if they weren't able to continue performing tasks when they rose because of those symptoms, you know, I don't feel it would be tolerated. I don't feel that they could do light work.

Q:   And I think I'm right in saying this, but if you could sit, if you could stand or walk less than two hours and sit for a total of two hours that would preclude competitive employment.

A:   Yes. It would be less than full-time work.

(Administrative Record at 67-68.)

### C. Caldwell's Medical History

On July 23, 2009, Caldwell met with Dr. Deema A. Fattal, M.D., for a neurology consultation. Caldwell's chief complaint was dizziness and light-headedness when standing. Caldwell stated that he has had difficulties with dizziness, light-headedness, and headaches most of his adult life. According to Caldwell, these difficulties started after he

was hit in the head with a 150 pound driver's hatch lid, while in military service as a young man. Upon examination, Dr. Fattal diagnosed Caldwell with orthostatic dizziness. Dr. Fattal recommended medication as treatment.

On December 29, 2010, Dr. Aaron Quinn, Ph.D., reviewed Caldwell's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Caldwell. On the Psychiatric Review Technique assessment, Dr. Quinn diagnosed Caldwell with dysthymia and anxiety disorder. Dr. Quinn determined that Caldwell had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Quinn determined that Caldwell was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Quinn concluded that:

> Based on the evidence, [Caldwell] is expected to have difficulties at times with extended attention/concentration, detailed instructions, pace/persistence, interpersonal functioning, and change. [Caldwell] will benefit from limited interactions with others at times.

(Administrative Record at 550-51.)

On January 5, 2011, Dr. Gary Cromer, M.D., reviewed Caldwell's medical records and provided DDS with a physical RFC assessment for Caldwell. Dr. Cromer determined that Caldwell could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or

8

carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Cromer also determined that Caldwell could frequently, climb, balance, stoop, kneel, crouch, and crawl. Dr. Cromer opined that Caldwell should avoid concentrated exposure to extreme cold, humidity, and fumes, odors, dusts, gases, and poor ventilation. Dr. Cromer found no manipulative, visual, or communicative limitations.

On June 18, 2012, Caldwell presented at Allen Memorial Hospital in Waterloo, Iowa, for dizziness. Caldwell reported that his dizziness had been worsening over a two-week period. Dr. Thejeswi Pujar, M.D., noted that:

> The dizziness is in the form of the patient feeling as if he is spinning, not the room. This is more worse when he is trying to stand up or walking around rather than when he is lying down. Also, he has noticed in the past 2 weeks, he has intermittent jerking movements, [which have] been increasing in frequency to the extent that he had about 15 times today.
>
> Each of these episodes is preceded by confusion followed by jerky movements of . . . both upper extremities followed by a time period of confusion.

(Administrative Record at 784.) Upon examination, Dr. Pujar diagnosed Caldwell with possible seizure disorder. Dr. Pujar ordered a CT scan and EEG. The CT scan showed no acute intracranial abnormality. Similarly, the EEG was normal, though the interpreting doctor opined that the normal EEG did not rule out seizure disorder.

On September 18, 2012, Caldwell met with Dr. Aynur Okcay, M.D., for a consultative examination. Dr. Okcay noted that Caldwell had been complaining of dizziness for the past 10 years. Caldwell also complained of weakness and getting tired easily. Lastly, Dr. Okcay noted that Caldwell "is also having some memory problem[s] that come[] and go[], impair[] his daily functioning in . . . that he can not go out alone,

can not drive and forgets his appointments."[5]  Dr. Okcay indicated that "[o]verall, [Caldwell] is not compliant with his medical care, does not follow up with his doctor. He has been referred to a psychiatrist but he also did not [follow up] with his psych care."[6] Upon examination, Dr. Okcay diagnosed Caldwell with dizziness, generalized weakness, and memory impairment.

On February 6, 2013, at the request of Caldwell's attorney, Dr. Laura Calderwood, M.D., Caldwell's treating psychiatrist, filled out "Mental Impairment Interrogatories" for Caldwell.  Dr. Calderwood diagnosed Caldwell with dysthymia and anxiety disorder. Dr. Calderwood noted the following signs and symptoms for Caldwell: poor memory, mood disturbance, suicidal ideation at the time of his wife's death, social withdrawal, isolation, and pathological dependence.  Dr. Calderwood noted that Caldwell's response to treatment is better when he consistently takes his medication.  Dr. Calderwood rated Caldwell's prognosis as "fair."  Dr. Calderwood determined that Caldwell was moderately limited in his ability to: understand and remember detailed instructions, maintain attention and concentration for extended periods of time, and maintain regular attendance.  Lastly, Dr. Calderwood determined that Caldwell had the following limitations: no restriction of activities of daily living, slight difficulties in maintaining social functioning, and at times would have difficulties in maintaining concentration, persistence, or pace.

On February 7, 2013, at the request of Caldwell's attorney, Dr. Bruce L. Baridon, D.O., a treating physician, filled out a "Cardiac Medical Source Statement" for Caldwell. Dr. Baridon indicated that Caldwell's New York Heart Association functional classification was III.[7]  Dr. Baridon identified the following signs and symptoms for Caldwell: chest

---

[5] Administrative Record at 762.

[6] *Id.*

[7] According to the American Heart Association, doctors generally classify patients' heart failure based on the severity of their symptoms.  The New York Heart Association
(continued...)

10

pain, chronic fatigue, dizziness, and back pain. Dr. Baridon determined that Caldwell's functional abilities are as follows: (1) He can walk 3 blocks without rest, but gets tired; (2) stand/walk less than two hours in an eight-hour workday; (3) sit for about two hours in an eight-hour workday; (4) he would need unscheduled work breaks approximately every 30 minutes that last 30-45 minutes; (5) he could rarely lift 10 pounds and occasionally lift less than 10 pounds; and (6) he could occasionally stoop and climb stairs, rarely twist or crouch, and never climb ladders. Dr. Baridon also opined that Caldwell would be "off task" approximately 25% of the time or more during a typical workday due to difficulties with attention and concentration caused by his symptoms and impairments. Lastly, Dr. Baridon estimated that Caldwell would miss more than four days of work per month due to his impairments or treatment for his impairments.

On March 7, 2013, Dr. Baridon filled out a second "Cardiac Medical Source Statement" for Caldwell. The second statement is nearly identical to the February statement, except that Dr. Baridon noted Caldwell's angina episodes typically occur when he over-exerts himself. Dr. Baridon also limited Caldwell to standing for 10 minutes at a time during an eight-hour workday. Lastly, unlike the February statement, Dr. Baridon opined that Caldwell should lift no more than 10 pounds. Otherwise, Dr. Baridon's opinions were the same as his opinions in the February statement.

---

[7](...continued)
Functional Classification system is the most commonly used classification system. The classifications suggest how a patient with cardiac disease feels during physical activity. Classification III is for "[p]atients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain." www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp (last visited May 8, 2014).

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Caldwell is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the

> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Caldwell had not engaged in substantial gainful activity since November 7, 2011. At the second step, the ALJ concluded from the medical evidence that Caldwell had the following severe impairments: major depressive disorder, anxiety disorder, personality disorder, and obesity. At the third step, the ALJ found that Caldwell did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Caldwell's RFC as follows:

> [Caldwell] has the residual functional capacity to perform a
> full range of work at all exertional levels but with the
> following non-exertional limitations: he can frequently climb,
> balance, stoop, kneel, crouch, and crawl; he should avoid
> concentrated exposure to noise and pulmonary irritants; he can

perform simple routine tasks in environments with occasional
interaction with the public, coworkers, and supervisors.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Caldwell
was capable of performing his past relevant work as a box maker. Therefore, the ALJ
concluded that Caldwell was not disabled.

### B. Objections Raised By Claimant

Caldwell argues that the ALJ erred in three respects. First, Caldwell argues that
the ALJ failed to properly consider the opinions of his treating doctors, Drs. Baridon and
Calderwood. Second, Caldwell argues that the ALJ failed to properly evaluate his
subjective allegations of disability. Lastly, Caldwell argues that the ALJ provided a flawed
hypothetical question to the vocational expert at the administrative hearing.

### 1. Treating Source Opinions

An ALJ is required to "assess the record as a whole to determine whether treating
physicians' opinions are inconsistent with substantial evidence of the record." *Travis v.
Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).
"Although a treating physician's opinion is entitled to great weight, it does not
automatically control or obviate the need to evaluate the record as a whole." *Hogan v.
Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th
Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical
assessments are supported by superior medical evidence, or if the treating physician has
offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's
statement that is 'not supported by diagnoses based on objective evidence' will not support
a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the
doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the
ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir.
2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is
inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d
561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and

examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

### a.   Dr. Baridon's Opinions

Caldwell argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Baridon. Caldwell maintains the ALJ failed to properly weigh Dr. Baridon's opinions. Caldwell also asserts the ALJ's reasons for discounting Dr. Baridon's opinions are not supported by substantial evidence in the record. Caldwell concludes that this matter should be remanded for further consideration of Dr. Baridon's opinions.

In his decision, the ALJ addressed Dr. Baridon's opinions as follows:

> The undersigned has considered the opinion evidence
> submitted by Bruce Baridon, D.O., who [i]s [Caldwell's]
> primary care physician at the Veteran's Administration.
> Dr. Baridon completed a cardiac medical source statement on
> the request of [Caldwell's] representative. While indicating a
> New York Heart Association functional classification of III,
> the undersigned finds it notable that the physician had
> previously noted in his treatment notes an ASA status of II,
> noting only mild systemic disease. The undersigned finds the
> doctor's rating of III inconsistent with his treatment notes and
> inconsistent with the paucity of objective medical
> findings[.] . . . In his statement, Dr. Baridon further reported
> that [Caldwell] was experiencing chest pains twice per week,
> could walk three blocks, stand or walk for less than two hours
> in a day, sit for less than two hours in a workday, would need
> unscheduled breaks throughout the workday, and could lift
> only ten pounds occasionally. The doctor further opined that
> [Caldwell] would miss more than four days of work per month
> due to his impairments and treatment. However, contrary to
> these findings, treatment notes from January of 2013 indicated
> that [Caldwell] was doing well on medication with respect to
> his coronary artery disease. In addition, this opinion appeared
> to be at odds with findings from a physical consultative
> evaluation, which demonstrated normal physical examination
> findings, despite [Caldwell's] complaints of dizziness,
> generalized weakness, and memory impairment. Furthermore,
> objective physical examinations throughout the treatment
> record were normal, including Dr. Baridon's own clinical
> findings. . . . As such, the undersigned has afforded
> Dr. Baridon's opinions little weight.

(Administrative Record at 20-21.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a

treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds the ALJ has not fully met these requirements. First, the ALJ incorrectly attributed the ASA rating of II to Dr. Baridon. Dr. Baridon did not give Caldwell an ASA rating of II. Dr. Michael A. Cassady, D.O., in a pre-anesthesia assessment of Caldwell for a gastrointestinal procedure, opined that Caldwell had an ASA rating of II, and cleared him for anesthesia. Dr. Cassady's opinion has no relevance to Caldwell's cardiac disease or Dr. Baridon's cardiac assessment of Caldwell. Second, the ALJ refers to a consultative examination that is inconsistent with Dr. Baridon's opinions. The consultative examination was performed in 2009, four years prior to Dr. Baridon's opinions. The Court is unconvinced that such reasoning is sufficient to disregard Dr. Baridon's opinions. Lastly, the ALJ correctly points out that in one instance Dr. Baridon noted that Caldwell was "doing well" on medication. Again, the Court is unconvinced that one instance, in a single treatment note, where the doctor states Caldwell is doing well on medication constitutes a "good" reason for giving little weight to Dr. Baridon's opinions. The Court also finds it significant that based on Dr. Baridon's opinions, Caldwell's cardiac disease results in marked limitation of physical activity.[8] While the ALJ has provided some reasons for giving Dr. Baridon's opinions "little weight," the Court is unconvinced by two of those reasons. Specifically, the ALJ incorrectly attributed the ASA II classification to Dr. Baridon, and also relied on a consultative examination from four years prior to Dr. Baridon's opinion to support an inconsistency. Under the circumstances, the Court believes the ALJ failed to fully and fairly develop the record with regard to Dr. Baridon's opinions, and remand is appropriate.

---

[8] According to the New York Heart Association Functional Classification system, a classification of III is for "[p]atients with cardiac disease resulting in marked limitation of physical activity." www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeart Failure/Classes-of-Heart-Failure_UCM_306328_Article.jsp (last visited May 8, 2014).

In summary, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Baridon. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Baridon's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Baridon's opinions. On remand, the ALJ shall provide clear and accurate reasons for accepting or rejecting Dr. Baridon's opinions and support his reasons with evidence from the record.

### b.   Dr. Calderwood's Opinions

Caldwell argues the ALJ erred by failing to address, or even mention in his decision, Dr. Calderwood's opinions found in the "Mental Impairment Interrogatories" that she filled out for Caldwell. According to Caldwell, remand is necessary to allow the ALJ to fully and fairly consider the opinions of Dr. Calderwood. The Commissioner agrees with Caldwell that the ALJ did not address Dr. Calderwood's opinions; however, the Commissioner excuses the ALJ's failure to consider Dr. Calderwood's opinions because the Commissioner believes the "Mental Impairment Interrogatories" were not in the administrative record before the ALJ when he made his decision. In support of this assertion, the Commissioner states that:

> The exhibit that contains Dr. Calderwood's opinion, "28F," is not included in the list of exhibits that the ALJ considered. Although the opinion of Dr. Calderwood is dated before the administrative hearing, at the administrative hearing, the ALJ indicated that the exhibits ran from "1A to 27F. . . ." It is not clear when this exhibit was submitted to the agency. However, this opinion was part of the record reviewed by the Appeals Council, as demonstrated by the numbering of the evidence submitted to the Appeals Council beginning with exhibit "29F."

Commissioner's Brief (docket number 13) at 17. It is not entirely clear to the Court how the Commissioner's statement supports her assertion that the "Mental Impairment

Interrogatories" were not in the administrative record at the time the ALJ made his decision. Moreover, in his reply brief, Caldwell offers a plausible counter-argument to the Commissioner's assertion:

> The Commissioner does not dispute that the ALJ did not mention Dr. Calderwood's opinion in his decision. . . . Rather, the Commissioner excuses the ALJ's failure to mention this treating source opinion on the grounds that it was not on the list of exhibits attached to the ALJ decision, and [Caldwell] did not make any objection to this list. The fact that the list of additional medical records reviewed by the Appeals Council begins with Exhibit 29F, rather than Exhibit 28F, which is Dr. Calderwood's opinion, strongly suggests that Dr. Calderwood's opinion was part of the administrative record before the ALJ issued his decision.

Caldwell's Reply Brief (docket number 14) at 1-2.

Here, it is unclear whether the ALJ considered Dr. Calderwood's opinions from the "Mental Impairment Interrogatories." The ALJ's decision, however, does demonstrate that he considered Dr. Calderwood's treatment notes in making his disability determination for Caldwell.[9] Unlike the interrogatories, however, Dr. Calderwood's treatment notes provide no opinions on Caldwell's functional abilities. Because it is unclear whether the ALJ considered Dr. Calderwood's opinions from the interrogatories, the Court finds that further development of the record as to those opinions is appropriate. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to fully and fairly develop the record). In developing the record, the ALJ is directed to specifically address Dr. Calderwood's opinions from the "Mental Impairment Interrogatories." Accordingly, on remand the ALJ shall provide clear and accurate reasons for accepting or rejecting Dr. Calderwood's opinions, including those expressed in the "Mental Impairment Interrogatories," and support his reasons with evidence from the record.

---

[9] *See* Administrative Record at 24-25.

## 2. *Credibility Determination*

Caldwell argues that the ALJ failed to properly evaluate his subjective allegations of disability. Caldwell maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Caldwell's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th

Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[10] In his decision, the ALJ discredits Caldwell's subjective allegations of disability on two grounds. First, the ALJ determined that the objective medical evidence does not support Caldwell's subjective allegations.[11] Second, the ALJ further determined that Caldwell's daily activities are inconsistent with his subjective allegations.[12] As discussed in sections *V.B.1.a* and *.b* of this decision, the ALJ failed to fully and fairly develop the record and properly consider the opinions of two physicians, Dr. Baridon and Dr. Calderwood. Both physicians opined that Caldwell had

---

[10] *See* Administrative Record at 26.

[11] *Id.* at 26-27.

[12] *Id.* at 27.

limitations due to his impairments.[13] In particular, Dr. Baridon's opinion indicated that Caldwell had marked limitations with physical activity.[14] Furthermore, while inconsistences between daily activities and subjective allegations may serve as a reason for discounting a claimant's allegations, standing alone, such a reason is unconvincing to the Court. Especially when the Eighth Circuit Court of Appeals has found that the ability "to engage in some life activities, however, does not support a finding that [a claimant] retains the ability to work." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004).

Having reviewed the entire record, the Court believes that in remanding this matter for further consideration of the opinions of Dr. Baridon and Dr. Calderwood, the ALJ should also further consider Caldwell's allegations of disability in light of his reconsideration of Dr. Baridon's and Dr. Calderwood's opinions. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Caldwell's credibility determination.

### 3. *Hypothetical Question*

Caldwell argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Similarly, Caldwell also argues that the ALJ's hypothetical was incomplete and did not contemplate all of his functional limitations. Caldwell maintains that this matter should be remanded

---

[13] *See* Administrative Record at 815-818 (Dr. Baridon's evaluation); 820-825 (Dr. Calderwood's evaluation).

[14] *Id.* at 815.

so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In section *V.B.1* and *V.B.2* of this decision, the Court remanded this matter for further consideration of Drs. Baridon's and Calderwood's opinions regarding Caldwell's impairments, and for further consideration of Caldwell's subjective allegations of disability. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Caldwell's limitations based on the medical evidence as a whole, including the opinions of Dr. Baridon and Dr. Calderwood, and Caldwell's own subjective allegations of disability. *See Hunt*, 250 F.3d at 625.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Baridon and Dr. Calderwood; (2) make a proper credibility determination in this matter; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Caldwell's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## *VI. CONCLUSION*

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Baridon and Dr. Calderwood and support his reasons with evidence from the record. The ALJ shall also consider all of the evidence relating to Caldwell's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations when determining Caldwell's credibility. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Caldwell's limitations based on the medical evidence as a whole.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 14th day of May, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA